**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

LEONID PAVLUSHKIN,

    An individual,

Plaintiff.

      v.

WILBUR ROSS,
SECRETARY OF THE UNITED STATES DEPARTMENT OF COMMERCE,

Defendant.

_____

**COMPLAINT AND REQUEST FOR JURY TRIAL**
_____

    Plaintiff, Leonid Pavlushkin [Pavlushkin], by and through his attorneys, Thomas H. Mitchiner of Mitchiner Law, LLC, and Steven L. Murray of Murray Law, LLC, submits his Complaint and Request for Jury Trial against Defendant Wilbur Ross, the Secretary of the United States Department of Commerce.

    Pavlushkin asserts claims for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e *et seq*. [Title VII], as amended. Defendant employed Pavlushikin as a Supervisory Police Officer. The Defendant intentionally and willfully: (1) discriminated against Pavlushkin based on his Russian national origin; and (2) retaliated against Pavlushkin because he participated in lawfully protected activities, including filing discrimination complaints.

## I. PARTIES

1. Pavlushkin permanently resides in Centennial, Colorado with his family.

2. Pavlushkin, a male, is of Russian national origin. He is forty-seven years of age, and he is a United States citizen.

3. Pavlushkin, currently works and lives in California, without his family, to perform his current employment duties for the United States Department of the Air Force.

4. Pavlushkin served as a Supervisory Police Officer with the Police Services Group in Boulder, Colorado, Office of Security, Office of the Secretary, United States Department of Commerce.

5. Defendant Wilbur Ross is the Secretary of the United States Department of Commerce, an Executive Agency, including the Office of Security, Office of the Secretary. [Defendant or Agency].

## II. JURISDICTION AND VENUE

6. All alleged claims are under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e, 2000e-5, 2000e-5(f)(1)(3), and 2000e-16(c), as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

7. This Court has jurisdiction under 28 U.S.C. Section 1331. Also, this Court has jurisdiction of this action under 28 U.S.C. Sections 1343 (a) (3) (4).

8. The alleged unlawful acts took place in Colorado, in the Judicial District of this Court.

9. Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391(b) (1) (2), and 1391(e) (1), and 42 U.S.C. Section 2000e-5(f) (3).

## III. ADMINISTRATIVE PROCEDURES

10. Before filing this action, Pavlushkin, timely, properly, and lawfully exhausted all required administrative remedies.

11. Pavlushkin filed his EEO charges with the Agency.

12. The Agency issued a Final Agency Decision, dated August 7, 2020.

13. This Decision provided Pavlushkin with ninety days to file a lawsuit in the United States District Court.

14. This case is filed within ninety days of the Final Agency Decision, and therefore is timely filed.

## IV. GENERAL ALLEGATIONS

15. Pavlushkin served as a Supervisory Police Officer with the Police Services Group in Boulder, Colorado, Office of Security, Office of the Secretary, United States Department of Commerce. [Defendant or Agency].

16. Defendant employed Pavlushkin from March 2019 – November 2019, at which time he resigned.

17. Charles Laymon [Laymon], the Deputy Chief of Police, served as Pavlushkin's first-level supervisor throughout Pavlushkin's employment with the Agency.

18. Laymon made disparaging statements about Pavlushkin's Russian national origin and his Russian accent.

19. Laymon overheard Pavlushkin speaking in Russian, with his wife, in a cell phone discussion.

20. After the call, Laymon told Pavlushkin that it would be funny to ask for a translation or closed captioning of his private conversation.

21. Pavlushkin objected to Laymon's comments by informing Laymon that if he wanted to learn another language, he should enroll in a college and learn it.

22. On another occasion, when Pavlushkin and Laymon worked at a firearms qualification site, Laymon approached him and said, "Quick suggestion, maybe you shouldn't be speaking Russian in front of others."

23. In response, Pavlushkin asked Laymon why he should not. Pavlushkin noted that he speaks five languages. Laymon did not respond and turned and walked away.

24. Craig Trumpet [Trumpet], the Director of Security, served as Laymon's first-level supervisor and Pavlushkin's second-level supervisor.

25. Roxann Newcomb [Newcomb], whose national origin upon information and belief is American, a female, served as a Sergeant in the Police Services Group, beginning on or about April 14, 2019.

26. Newcomb was the only female Sergeant.

27. Newcomb and Pavlushkin were co-workers.

28. Laymon served as Newcomb's first-level supervisor.

29. The Agency treated Newcomb more favorably than the Agency treated Pavlushkin during Pavlushkin's employment.

30. Upon being hired by the Defendant, it required Pavlushkin to 12-hour shifts. He worked 12-hour shifts throughout his employment with the Agency.

31. When the Agency hired Newcomb, the Agency did not require her to work 12-hour shifts.

32. On multiple occasions, Pavlushkin complained to Laymon that Defendant assigned Newcomb to work 8-hour shifts and not 12-hour shifts like the rest of the staff.

33. Laymon explained to Pavlushkin that Newcomb did not need to work a 12-hour shift because she did not have a uniform.

34. Approximately three weeks later, Pavlushkin offered a uniform to Newcomb. Newcomb declined, stating that she was not going to work a shift yet."

35. Pavlushkin and a co-worker continued to inquire about the fact that Newcomb was not working 12-hour shifts.

36. In response, Laymon told Pavlushkin that Newcomb was his personal assistant and was doing that type of work.

37. There were seven sergeants, six males and one female, Newcomb.

38. The males worked 12-hour shifts, and Newcomb worked an 8-hour shift.

39. The Agency required Pavlushkin and his male colleagues to wear a uniform and possess/carry a badge and credentials, a gun, baton, handcuffs, pepper spray, and a taser. The purpose of this requirement and practice was to inform the public that the employees were police officers.

40. The Agency: (1) did not require Newcomb to wear a uniform, a badge and credentials, a gun, baton, handcuffs, pepper spray, a taser, and (2) assigned Newcomb to respond to calls in plain clothes.

41. Laymon canceled Pavlushkin's overtime on three occasions. In so doing, Laymon adjusted Newcomb's schedule in a manner favorable to her.

42. Pavlushkin requested Laymon to approve his Combat Medical Training, and Laymon denied the request.

5

43. Pavlushkin confronted serious, adverse family needs.

44. Pavlushkin's family needs included childcare needs for his two children, caring for his two parents who fell gravely ill, and ensuring that he was meeting these responsibilities during the hours that his wife worked.

45. Because of his family circumstances, Pavlushkin informed Laymon of the importance of working the swing shift.

46. The swing shift permitted Pavlushkin to meet his ever-increasing family needs.

47. Without any explanation, and even though Pavlushkin asked to be scheduled on the swing shit, Laymon stopped scheduling Pavlushkin for the swing shift.

48. Pavlushkin was distraught by this scheduling change.

49. Via email, Pavlushkin objected to Laymon changing his schedule.

50. Pavlushkin explained to Laymon why working the swing shift was very critical to him.

51. Laymon did not grant Pavlushkin's request to work on the swing shift.

52. Pavlushkin observed that Laymon granted Newcomb's requests concerning her schedule.

53. Pavlushkin's submitted doctors' notes to Laymon and Trumpet, again explaining his need to work the swing shift.

54. Laymon responded that Pavlushkin "needed to explain better why [he] should receive preferential treatment and be given the schedule [he] wanted."

55. Pavlushkin complained to Laymon that he was preferentially treating Newcomb and causing Pavlushkin to suffer severe hardship.

56. In the next six weeks, Laymon required Pavlushkin to submit multiple doctors'

6

notes explaining the "precise hardships" the scheduling change had imposed on Pavlushkin.

57. After approximately six weeks, Laymon changed Pavlushkin's schedule.

58. Before on or about July 16, 2019, Pavlushkin submitted several complaints to Laymon about Laymon's favorable treatment of Newcomb and Laymon's less favorable treatment of Pavlushkin.

59. Pavlushkin's complaints to Laymon were futile.

60. On or about July 16, 2019, Pavlushkin sent an email to Trumpet, his second-level supervisor, complaining of Laymon's discriminatory favoritism toward Newcomb.

61. Pavlushkin informed Trumpet that he wanted to speak with him,

62. Pavlushkin reasonably believed that Trumpet would treat his complaint as confidential.

63. Trumpet did not agree to talk with Pavlushkin.

64. Trumpet did not treat Pavlushkin's complaint as confidential.

65. Trumpet did not respond to the merits of Pavlushkin's complaint.

66. Following Trumpet's lack of action on Pavlushkin's complaint, Pavlushkin submitted an email complaint to Washington, DC, and the "AD" to whom Trumpet reported. Pavlushkin did not receive a response to the complaint that he submitted to Washington.

67. Pavlushkin had an unpleasant encounter with an individual who parked in his authorized parking place. The person was hostile to Pavlushkin.

68. A few days after the encounter, Laymon sent a memorandum to Pavlushkin, admonishing him for his conduct.

69. Pavlushkin responded to Laymon, essentially stating that he did not engage in

improper conduct or violate any policy or procedure.

70. Approximately two months after Laymon admonished Pavlushkin, Laymon issued him a letter, placing him on paid administrative leave pending the completion of an investigation into his alleged misconduct in the parking lot.

71. Because of Laymon's action, the Defendant's Office of Inspector General [OIG] investigated Pavlushkin.

72. The OIG did not find that Pavlushkin engaged in any improper conduct.

73. Pavlushkin, while on administrative leave, had no capability of earning overtime or differential pay that he would typically earn, which caused him to suffer financial hardship.

74. Pavlushkin was subjected to continuing discrimination and retaliation, and he felt that he was subjected to a continuing hostile work environment.

75. Pavlushkin resigned from the Agency because he reasonably believed that he was subjected to an increasingly hostile work environment.

76. Pavlushkin viewed the combined conditions of his employment as intolerable, and he believed that he was compelled to resign.

77. Pavlushkin's next employment position was a position with an annual salary of approximately $10,000.00 less than he was earning with the Defendant. This position required him to live outside of Colorado, away from his wife and family.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM

### [National Origin Discrimination – Title VII]

78. Pavlushkin hereby incorporates and restates all allegations previously

asserted in this Complaint as though fully incorporated herein. foregoing paragraphs are incorporated by reference.

79. The Defendant Agency engaged in unlawful, intentional, and willful discrimination against Pavlushkin based on his Russian national origin.

80. Title VII forbids a covered employer from discriminating against or discharging any individual with respect to terms, conditions, or privileges of employment, because of such individual's national origin. 42 U.S.C. Section 2000e–2(a)(1)(2).

81. Also, Title VII prohibits a covered employer from limiting, segregating, or classifying any employee in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of an individual's national origin. 42 U.S.C. Section 2000e–2(a)(2).

82. Pavlushkin was a member of the Title VII protected class because he is of Russian national origin.

83. Defendant was aware that Pavlushkin was a member of the Title VII protected class.

84. The Defendant discriminated against Pavlushkin based on his membership in the Title VII protected class.

85. Defendant discriminated against Pavlushkin, concerning the terms, conditions, or privileges of employment, because of his national origin. 42 U.S.C. Section 2000e–2(a)(1).

86. Defendant discriminated against Pavlushkin based on Title VII protected class, national origin, by limiting, segregating, or classifying him in a way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect his status as an

employee because of his national origin. 42 U.S.C. Section 2000e–2(a)(2).

87. Pavlushkin was qualified for his employment position, and he was adequately performing the duties of his job.

88. Defendant subjected Pavlushkin to a constructive discharge because Defendant subjected him to intolerable terms and employment conditions, including but not limited to continued discrimination and a continuing hostile work environment.

89. Defendant's treatment Pavlushkin constitutes intentional, unlawful national origin discrimination in violation of 42 U.S.C. Sections 2000e- 2(a)(1)(2), and 2000e-16(c), and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

## SECOND CLAIM
### [Retaliation - Title VII]

90. Pavlushkin hereby incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

91. This claim is for unlawful retaliation in violation of Title VII, 42 U.S.C. Section 2000e-3 (a).

92. Under Title VII, at all times, Defendant was specifically prohibited from unlawful retaliation and discrimination against Pavlushkin because he engaged in EEO activities protected by Title VII. 42 U.S.C. Section 2000e-3(a).

93. Pavlushkin participated in protected Title VII activities, and he opposed conduct prohibited by Title VII.

94. Pavlushkin's Title VII protected activity included was not limited to his complaints to Laymon, Trumpet, and the Agency about the Defendant's: (1) discrimination against him

based on national origin; (2) sex discrimination by treating Newcomb more preferentially than the Agency treated him, and (3) continuing retaliation against him.

95. At all times, the Defendant was fully aware of Pavlushkin's protected Title VII activities.

96. As previously described in this Complaint, Defendant engaged in materially adverse retaliatory actions against Pavlushkin by committing a series of discriminatory actions against him, based on his national origin and lawful participation in protected activities.

97. A causal connection exists between Pavlushkin's protected activities and the unlawful materially adverse employment actions.

98. The Defendant engaged in the retaliatory materially adverse actions against Pavlushkin because of Pavlushkin's participation in the protected Title VII activities, or alternatively, but-for Pavlushkin's participation in the protected Title VII activities.

99. There is sufficient temporal proximity between Pavlushkin's protected activity and his termination from employment.

100. As previously described in this Complaint, Defendant engaged in unlawful, direct, intentional, adverse, retaliatory, and discriminatory employment actions prohibited by Title VII against Pavlushkin because of his protected Title VII activities.

101. This intentional, unlawful retaliation was created, perpetrated, and tolerated by the Defendant's officials, managers, and employees.

102. The Defendant's treatment of Pavlushkin constitutes unlawful and intentional retaliation and discrimination in violation of 42 U.S.C. Section 2000e-3(a), and

11

2000e-16(c), as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

## THIRD CLAIM

### [Hostile Work Environment Based on National Origin – Title VII]

103. Pavlushkin hereby incorporates and restates all allegations previously asserted in this Complaint as fully incorporated herein.

104. Title VII prohibits national origin discrimination in the form of a hostile work environment based on national origin. 42 U.S.C. Sections 2000e-2(a)(1)(2).

105. The Defendant, in consideration of all the facts, in a cumulative manner, intentionally created, tolerated, and perpetuated a hostile and abusive work environment, based upon national origin, against Pavlushkin.

106. Defendant's conduct and comments directed at Pavlushkin subjected him to materially adverse conduct, which was unwelcome and offensive.

107. Defendant's conduct and comments directed at Pavlushkin subjected him to materially adverse conduct which: (1) was sufficiently severe and or pervasive as to alter the terms, conditions, and privileges of his employment adversely; (2) created an abusive working environment for Pavlushkin, involving discriminatory intimidation, ridicule, and insult, causing him emotional and financial harm; and (3) was based on national origin, and or specifically and solely directed at Pavlushkin, because of his Title VII protected class based on national origin association.

108. The Defendant is liable for subjecting Pavlushkin to the hostile work environment claim because Laymon was Pavlushkin's supervisor.

109. Laymon engaged in the conduct and condoned the conduct by refusing to

protect Pavlushkin's status, rights, privileges, and employment conditions.

110. The Defendant's conduct resulted in a tangible employment action, Pavlushkin's involuntary separation from employment through constructive discharge.

111. In addition to, or in the alternative to the contentions in the above paragraphs, Defendant is liable for subjecting Pavlushkin to the national origin-based hostile work environment claim.

112. Defendant is liable for subjecting Pavlushkin to the hostile work environment because Pavlushkin's supervisors and managers knew or should have known of all the materially adverse conduct in issue, they subjected him to.

113. Defendant failed to: (1) stop the materially adverse conduct in issue; and (2) implement reasonably prompt and appropriate corrective action.

114. Each successive episode of Defendant's cumulative conduct against Pavlushkin, constituting the hostile work environment, had its predecessors, and the impact of the separate incidents accumulated such that the unlawful work environment created exceeded the sum of any individual episode.

115. Defendant treatment of Pavlushkin constitutes an intentional, unlawful, hostile work environment, based on national origin, in violation of 42 U.S.C. Sections 2000e-2(a) (1) (2); and 2000e-16(c), as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

## FOURTH CLAIM

### [Hostile Work Environment Based Retaliation – Title VII]

116. Pavlushkin hereby incorporates and restates all allegations previously

asserted in this Complaint as fully incorporated herein.

117. Title VII prohibits discrimination in the form of retaliation against a person for his participation in lawfully protected activities under Title VII. 42 U.S.C. Sections 2000e-2(3).

118. The Defendant, in consideration of all the facts, in a cumulative manner, intentionally created, tolerated, and perpetuated a hostile and abusive work environment based upon unlawful retaliation against Pavlushkin.

119. Defendant's conduct and comments directed at Pavlushkin subjected him to materially adverse conduct, which was unwelcome and offensive.

120. Defendant's conduct and comments directed at Pavlushkin subjected him to materially adverse conduct which: (1) was sufficiently severe and or pervasive as to alter the terms, conditions, and privileges of his employment adversely; (2) created an abusive working environment for Pavlushkin, involving discriminatory intimidation, ridicule, and insult, causing him emotional and financial harm; and (3) was retaliatory, and or specifically and solely directed at Pavlushkin, because of his protected actions.

121. The Defendant is liable for subjecting Pavlushkin to the hostile work environment because Laymon was Pavlushkin's supervisor.

122. Laymon engaged in the conduct and condoned the behavior by refusing to protect Pavlushkin's status, rights, privileges, and employment conditions.

123. The Defendant's conduct resulted in a tangible employment action, Pavlushkin's involuntary separation from employment through constructive discharge.

124. In addition to, or in the alternative to the contentions in the above

paragraphs, Defendant is liable for subjecting Pavlushkin to the retaliation-based hostile work environment claim.

125. Defendant is liable for subjecting Pavlushkin to the hostile work environment claim because Pavlushkin's supervisors and managers knew or should have known of all the materially adverse conduct in issue.

126. Defendant failed to: (1) stop the materially adverse conduct in issue; and (2) implement reasonably prompt and appropriate corrective action.

127. Each successive episode of Defendant's cumulative conduct against Pavlushkin, constituting the hostile work environment, had its predecessors, and the impact of the separate incidents accumulated such that the unlawful work environment created exceeded the sum of any individual episode.

128. As previously described in this Complaint, Defendant engaged in materially adverse retaliatory actions against Pavlushkin, by subjecting him to the hostile work environment because of, or alternatively, but-for, his lawful participation in protected activities.

129. A causal connection exists between Pavlushkin's protected activities and the unlawful materially adverse employment actions.

130. The Defendant engaged in the retaliatory materially adverse actions against Pavlushkin because of Pavlushkin's participation in the protected Title VII activities, or alternatively, but-for Pavlushkin's participation in the protected Title VII activities.

131. There is sufficient temporal proximity between Pavlushkin's protected

activity and Defendant subjecting him to a hostile work environment.

132. Defendant treatment of Pavlushkin constitutes an intentional, unlawful, hostile work environment, based on retaliation, in violation of 42 U.S.C. Sections 2000e-3(a); and 2000e-16(c), as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

## VI. REQUEST FOR RELIEF

WHEREFORE, Pavlushkin respectfully requests this Court to enter judgment in his favor and against Defendant on all claims for relief asserted in this Complaint and Request for Jury Trial, and for the following relief:

(1) To enter a judgment in favor of Pavlushkin and against Defendant, finding the acts of the Defendant constitute continuing and intentional national origin discrimination in intentional violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e *et seq.*, as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

(2) To enter a judgment in favor of Pavlushkin and against Defendant, finding the acts of the Defendant constitute continuing, intentional retaliation, in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

(3) To enter a judgment in favor of Pavlushkin and against Defendant, finding the acts of the Defendant constitute continuing and intentional discrimination, in the form of a hostile work environment based on national origin, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

(4) To enter a judgment in favor of Pavlushkin and against Defendant, finding the acts of the Defendant constitute continuing and intentional discrimination, in the form of a hostile work environment based on retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*., as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

(5) To award Pavlushkin the remedies of damages for back pay, restored benefits, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all monetary damages to which he is entitled, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*., as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

(6) To award Pavlushkin compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which he is entitled, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*., as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

(7) To award Pavlushkin reinstatement, or in the alternative, front pay, pursuant to the pursuant Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*., as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

(8) To award Pavlushkin attorney fees and costs, pursuant to the pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*., as amended, including the Civil Rights Act of 1991.

(9) To award Pavlushkin prejudgment and post-judgment interest at the appropriate rate provided by law.

(10) To direct the Defendant to take such affirmative relief steps as are necessary to ensure that the effects of the Defendant's unlawful employment practices are eliminated and do not continue to affect Pavlushkin's employment opportunities.

(11) To award Pavlushkin any and all other legal and equitable relief, to which Pavlushkin is entitled pursuant to any law, that this Court deems just, equitable, and proper.

## VII. JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. Sections 2000e-5, 2000e-6, 2000e-8, 2000e-9, 2000e-16(c), as amended, and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, and all applicable laws providing for a right to trial by jury, Pavlushkin requests a jury trial of all claims and issues in this action.

Dated: November 3, 2020.

Respectfully submitted,

Mitchiner Law, LLC

/s/Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St. Suite 200
Denver, CO 80203
Telephone: 720.538.0371
Email: tmitchiner@mitchinerlawllc.com

Murray Law, LLC

/s/ Steven L. Murray Murray Law, LLC
1888 Sherman Street, Suite 200
Denver, CO 80203
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com


Plaintiff's Address:
5817 S. Lisbon Way
Centennial, CO 80015