IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03278-STV

LEONID PAVLUSHKIN,

    Plaintiff,

v.

WILBUR ROSS, Secretary of the United States Department of Commerce,

    Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on the Motion to Dismiss filed by Wilbur Ross, Secretary of the United States Department of Commerce (the "Motion"). [#8] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##9, 12] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED**.

**I.    FACTUAL BACKGROUND**[1]

    Plaintiff is a forty-seven-year-old male of Russian national origin. [#1, ¶ 2] From March 2019 through November 2019, Plaintiff served as a Supervisory Police Officer with

---

[1] The facts are drawn from the allegations in the Complaint [#1], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir.2011)).

1

the Police Services Group in Boulder, Colorado, Office of Security, Office of the Secretary, United States Department of Commerce (the "Agency"). [*Id.* at ¶¶ 15-16] Charles Laymon, the Deputy Chief of Police, served as Plaintiff's first-level supervisor throughout Plaintiff's tenure with the Agency. [*Id.* at ¶ 17] Craig Trumpet, the Director of Security, served as Deputy Chief Laymon's first-level supervisor and Plaintiff's second-level supervisor. [*Id.* at ¶ 24]

The Complaint alleges that during Plaintiff's tenure at the Agency, Deputy Chief Laymon made disparaging comments about Plaintiff's national origin and Russian accent. [*Id.* at ¶ 18] Specifically, after Deputy Chief Laymon overheard Plaintiff speaking to his wife in Russian, Deputy Chief Laymon told Plaintiff that it would be funny to ask for a translation or closed caption of the conversation. [*Id.* at ¶¶ 19-20] Plaintiff responded by telling Deputy Chief Laymon that if he wanted to learn another language, he should enroll in a college and learn that language. [*Id.* at ¶ 21] On another occasion, while Plaintiff and Deputy Chief Laymon were working at a firearms qualification site, Deputy Chief Laymon approached Plaintiff and commented: "Quick suggestion, maybe you shouldn't be speaking Russian in front of others." [*Id.* at ¶ 22] When Plaintiff asked Deputy Chief Laymon why he should not be speaking another language, Deputy Chief Laymon turned and walked away. [*Id.* at ¶ 23]

Beginning April 14, 2019, Roxann Newcomb, an American female, served as a Sergeant in the Police Services Division. [*Id.* at ¶ 25] Sergeant Newcomb was Plaintiff's co-worker and the only female Sergeant. [*Id.* at ¶¶ 26-27] As he was with Plaintiff, Deputy Chief Laymon was Sergeant Newcomb's first-level supervisor. [*Id.* at ¶ 28]

Plaintiff alleges that the Agency treated Sergeant Newcomb more favorably than it treated Plaintiff. [*Id.* at ¶ 29] Specifically, the Agency required Plaintiff to work 12-hour shifts but only required Sergeant Newcomb to work 8-hour shifts. [*Id.* at ¶¶ 30-31] When Plaintiff initially complained to Deputy Chief Laymon, Deputy Chief Laymon explained that Sergeant Newcomb did not need to work a 12-hour shift because she did not have a uniform. [*Id.* at ¶¶ 32-33] When Plaintiff offered Sergeant Newcomb a uniform, she declined, saying that she "was not going to work a shift yet." [*Id.* at ¶ 34] Of the seven sergeants, Sergeant Newcomb—the only female—was the only sergeant not required to work a 12-hour shift. [*Id.* at ¶¶ 37-38] When Plaintiff and another co-worker continued to complain about the difference in shifts, Deputy Chief Laymon stated that Sergeant Newcomb was his personal assistant and was doing personal assistant work. [*Id.* at ¶ 36]

Plaintiff alleges that he approached Deputy Chief Laymon and asked to work the swing shift. [*Id.* at ¶ 45] Plaintiff explained that he needed this shift to care for his children and gravely ill parents. [*Id.* at ¶¶ 44-45] Deputy Chief Laymon denied this request, and instead stopped scheduling Plaintiff for any swing shifts. [*Id.* at ¶¶ 47, 51] When Plaintiff presented doctors' notes demonstrating the precise hardships that Plaintiff's schedule caused, Deputy Chief Laymon responded by telling Plaintiff that he "needed to explain better why [he] should receive preferential treatment and be given the schedule [he] wanted." [*Id.* at ¶¶ 53-54 (alterations in original); *see also id.* at ¶ 56]

On several occasions, Plaintiff complained to Deputy Chief Laymon that he was giving preferential treatment to Sergeant Newcomb and causing Plaintiff to suffer severe

hardship.[2] [*Id.* at ¶¶ 55, 58] These complaints "were futile."[3] [*Id.* at ¶ 59] On or about July 16, 2019, Plaintiff sent an email to Director Trumpet complaining of Deputy Chief Laymon's discriminatory favoritism toward Sergeant Newcomb. [*Id.* at ¶ 60] Despite Plaintiff's request to speak with Director Trumpet, Director Trumpet refused to speak to Plaintiff, did not treat Plaintiff's complaint as confidential, and did not respond to the merits of Plaintiff's complaint. [*Id.* at ¶¶ 61-65] Following Director Trumpet's lack of action, Plaintiff submitted an email complaint to Director Trumpet's supervisor in Washington, DC. [*Id.* at ¶ 66] Plaintiff never received a response. [*Id.*]

At some point after sending the email to Director Trumpet's supervisor, Plaintiff had "an unpleasant encounter" with an unidentified individual who had parked in Plaintiff's authorized parking space. [*Id.* at ¶ 67] The unidentified person was hostile to Plaintiff. [*Id.*] A few days after the encounter, Deputy Chief Laymon sent a memorandum to Plaintiff admonishing him for his conduct. [*Id.* at ¶ 68] Plaintiff responded, saying that he had not acted improperly. [*Id.* at ¶ 69]

Approximately two months later, Deputy Chief Laymon issued Plaintiff a letter placing him on paid administrative leave pending a completion of an investigation into the parking lot incident. [*Id.* at ¶ 70] While on administrative leave, Plaintiff could not earn

---

[2] In addition to the difference in shifts, Plaintiff also alleges other disparate treatment between himself and Sergeant Newcomb. First, he alleges that the Agency required Plaintiff and his male colleagues to wear a uniform but allowed Sergeant Newcomb to wear plain clothes. [*Id.* at ¶¶ 39-40] Second, he alleges that Deputy Chief Laymon cancelled Plaintiff's overtime on three occasions while favorably adjusting Sergeant Newcomb's schedule. [*Id.* at ¶ 41] Finally, Plaintiff alleges that Deputy Chief Laymon denied Plaintiff's request to approve Combat Medical Training. [*Id.* at ¶ 42]

[3] The Complaint alleges that after approximately six weeks Deputy Chief Laymon changed Plaintiff's schedule, but it does not allege the manner in which the schedule changed or whether the change was favorable or unfavorable to Plaintiff. [*Id.* at ¶ 57]

4

overtime or differential pay. [*Id.* at ¶ 73] The Office of Inspector General conducted an investigation and did not find any misconduct. [*Id.* at ¶¶ 71-72] Nonetheless, Plaintiff resigned from the Agency because he believed he was being "subjected to an increasingly hostile work environment" and he "viewed the combined conditions of his employment as intolerable." [*Id.* at ¶¶ 75-76]

On November 3, 2020, Plaintiff filed the instant action. [#1] The Complaint brings four Title VII causes of action: (1) national origin discrimination, (2) retaliation, (3) hostile work environment,[4] and (4) hostile work environment retaliation.[5] [*Id.* at ¶¶ 78-132] Defendant moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). [#8] Plaintiff has responded [#15], and Defendant replied [#18].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[4] Plaintiff has since dismissed the hostile work environment claim. [#15 at 1 n.2]
[5] It is unclear how Claim Four differs from Claims Two or Three. To the extent Claim Four alleges retaliation due to Plaintiff's complaints about a hostile work environment, it fails for the reasons outlined below. To the extent Claim Four simply alleges a hostile work environment, the Court deems it dismissed based upon Plaintiff's concession in his Response. In any event, the Court is dismissing the Complaint without prejudice to allow Plaintiff the opportunity to cure the deficiencies outlined herein.

5

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. ANALYSIS

Plaintiff has alleged Title VII national origin discrimination and retaliation claims. [*See generally* #1] Defendant has moved to dismiss both claims. [#15] The Court analyzes each claim below.

### A. National Origin Discrimination

Claim One alleges that Defendant discriminated against Plaintiff because of his Russian national origin. [#1, ¶¶ 78-89] Plaintiff can prove a disparate treatment claim "either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)]." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015).

Here, Plaintiff relies upon the burden-shifting framework set forth in *McDonnell Douglas*. [#15 at 3-6] To make a prima facie case under that framework, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc*, 792 F.3d 1261, 1266 (10th Cir. 2015). If the plaintiff makes this showing, then the employer must have an opportunity to articulate some legitimate, non-discriminatory reason for its action. *Young*, 135 S. Ct. at 1345. If the employer articulates such a reason, then the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual. *Id.*

"The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). As the Supreme Court explained, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case"—*e.g.*, where a plaintiff is able to produce direct evidence of discrimination. *Id.* at 511. The Supreme Court further cautioned that "the precise requirements of a prima facie case can vary depending on the context" and thus "it may be difficult to define the precise formulation of the required prima facie case in a particular case" before "discovery has unearthed relevant facts and evidence." *Id.* at 512.

Although a plaintiff is not required to set forth a prima facie case of discrimination in the complaint, "she is required to set forth plausible claims." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). The plaintiff may not merely rely upon "the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal*." *Id.* "While specific

7

facts are not necessary, [ ] some facts are." *Id.* (internal quotation omitted). Moreover, although the plaintiff is not required to allege a prima facie case, "[t]he inferences offered by the *McDonnell Douglas* framework assist judges in resolving motions to dismiss by providing an analytical framework to sift through the facts alleged." *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015); *see also Khalik*, 671 F.3d at 1192 (finding that "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim").

Here, Plaintiff has alleged that he is of Russian nationality, that he was forced to work 12-hour shifts while Sergeant Newcomb was only required to work 8-hour shifts, that he was denied preferential shifts, and that he was placed on administrative leave. [*See generally* #1] The Court will assume for purposes of this Motion that Plaintiff has pled sufficient facts to infer that he is a member of a protected class who suffered an adverse employment action.

Nonetheless, Plaintiff has failed to plead facts sufficient to plausibly infer that any adverse employment action was the result of Plaintiff's national origin. The only two potential references to Plaintiff's national origin identified in the Complaint are two undated, stray comments about Plaintiff speaking in Russian. [*Id.* at ¶¶ 19-22] The Complaint makes no attempt to link these two comments to any of the potentially adverse actions listed above and "evidence of discrimination in the decision-making process must be distinguished from stray remarks in the workplace . . . or statements by decisionmakers unrelated to the decisional process." *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 911 (10th Cir. 2011) (quotation omitted). Rather, the two comments about Plaintiff speaking Russian appear to be the type of "isolated and ambiguous comment[s]

that [are] generally considered too abstract to support an inference of discrimination." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1201 (10th Cir. 2020) (quotation omitted).

The remainder of the allegations of the Complaint allege differing treatment between Plaintiff and Sergeant Newcomb. But the Complaint alleges that Sergeant Newcomb was treated differently than all of the sergeants, not just Plaintiff, and there is no indication that all of the other sergeants were also Russian. [#1, ¶¶ 37-38 (indicating that Sergeant Newcomb alone worked an 8-hour shift while all of the other sergeants worked 12-hour shifts); *id.* at ¶ 39 (indicating that Sergeant Newcomb was the only sergeant allowed to wear plain clothes)] Thus, while the Complaint may contain sufficient allegations to suggest that Sergeant Newcomb was treated differently from Plaintiff and their other colleagues, there is nothing to suggest that this differential treatment was the result of national origin discrimination.[6] Accordingly, Plaintiff has failed to plausibly plead a national origin discrimination claim and the Court GRANTS the Motion to the extent it seeks to dismiss Claim One. Claim One is DISMISSED WITHOUT PREJUDICE. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### B. Retaliation

Claim Two—and possibly Claim Four—allege Title VII retaliation. [*See generally* #1; *see also supra* n. 5] Title VII makes it unlawful to retaliate against an employee for opposing employment practices made unlawful by the statute. 42 U.S.C. § 2000e-3(a). To prevail on a Title VII retaliation claim, a plaintiff must establish "that retaliation played

---

[6] Plaintiff has not brought a Title VII gender discrimination claim.

a part in the employment decision." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (quotation omitted). Once again, this burden may be satisfied in two ways. *Id.* "Under the direct or 'mixed motives' approach, a plaintiff may offer direct evidence that retaliation played a 'motivating part' in the adverse employment decision." *Id.* "If the plaintiff can prove that retaliatory animus was a motivating factor, the burden then shifts to the employer to demonstrate that it would have taken the same action absent the retaliatory motive." *Id.*

Alternatively, a plaintiff may proceed under the burden-shifting framework established by *McDonnell Douglas*.[7] *Id.* Under that framework, "the plaintiff must first establish a prima facie case of retaliation by showing (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action." *Id.* (quotations omitted). Once the plaintiff asserts a prima facie case, the burden shifts to the employer to proffer a legitimate, non-retaliatory rationale for the materially adverse action. *Id.* If the employer does so, then the plaintiff must show that the "proffered rationale is pretextual." *Id.* (quotations omitted).

For purposes of this Motion, the Court will assume that Plaintiff has engaged in protected conduct and that he suffered a materially adverse action. Nonetheless, Plaintiff

---

[7] Again, the prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. *Swierkiewicz*, 534 U.S. at 510. But, while a plaintiff is not required to set forth a prima facie case of discrimination in the complaint, he is required to set forth plausible claims. *Khalik*, 671 F.3d at 1193. Moreover, although the plaintiff is not required to allege a prima facie case, "[t]he inferences offered by the *McDonnell Douglas* framework assist judges in resolving motions to dismiss by providing an analytical framework to sift through the facts alleged." *Morman*, 632 F. App'x at 933.

10

has failed to plausibly plead a causal connection between the protected activity and the materially adverse action. In his Response, Plaintiff relies solely upon the temporal connection between Plaintiff's complaints and Defendant placing Plaintiff on administrative leave. [#15 at 9-10] "However, unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original). The Tenth Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. *Id.* By contrast, the Tenth Circuit has "held that a three-month period, standing alone, is insufficient to establish causation." *Id.*; *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) ("[f]our months is too large a time gap to establish a causal connection").

Here, the Complaint lacks sufficient detail to determine the temporal proximity between the protected activity and any adverse action. With respect to the retaliation claim, the only dates provided in the Complaint are: (1) Plaintiff started with the Agency in March 2019 [#1, ¶ 16]; (2) on or about July 16, 2019, Plaintiff made complaints to Deputy Chief Laymon about Deputy Chief Laymon's treatment of Plaintiff [*id.* at ¶ 58]; (3) on or about July 16, 2019, Plaintiff sent an email to Director Trumpet complaining of Deputy Chief Laymon's discriminatory favoritism of Sergeant Newcomb [*id.* at ¶ 60]; and (4) Plaintiff resigned from the Agency in November 2019 [*id.* at ¶ 16]. Beyond indicating that Plaintiff was placed on administrative leave within two months of the parking lot incident [*id.* at ¶ 70], the Complaint does not contain any allegations suggesting when

11

Plaintiff was placed on administrative leave.[8]  Based upon this lack of detail, the Court cannot infer causation based upon temporal proximity or any other facts alleged in the Complaint.  Accordingly, the Court GRANTS the Motion to the extent it seeks to dismiss Claims Two and Four.  Claims Two and Four are DISMISSED WITHOUT PREJUDICE. *Reynoldson*, 907 F.2d at 127.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss [#8]. The Complaint [#1] is **DISMISSED WITHOUT PREJUDICE**.  Should Plaintiff seek to remedy the deficiencies identified in this Order, Plaintiff shall file an Amended Complaint by July 22, 2021.  Should Plaintiff fail to file an Amended Complaint by that date, judgment will enter in favor of Defendant.

DATED:  July 1, 2021　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　s/Scott T. Varholak
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[8] The parking lot incident occurred on an unknown date with an unknown individual, and the Complaint does not contain any facts suggesting that the parking lot incident involved protected activity.  [*Id.* at ¶ 67]